1

2          UNITED STATES DISTRICT COURT

3          EASTERN DISTRICT OF WASHINGTON

4

5   STEPHEN HUMPHREY PACIOS,          )   No. 2:12-CV-05111-LRS
                                      )
6              Plaintiff,             )   **ORDER GRANTING**
                                      )   **DEFENDANT'S MOTION FOR**
7       vs.                           )   **JUDGMENT,** *INTER ALIA*
                                      )
8   CAROLYN W. COLVIN,                )
    Acting Commissioner of Social     )
9   Security,                         )
                                      )
10             Defendant.             )
    _____  )

11       **BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment

12   (ECF No. 15) and the Defendant's Motion For Summary Judgment (ECF No. 16).

13

14                          **JURISDICTION**

15       Stephen Humphrey Pacios, Plaintiff, applied for Title II Disability Insurance

16   benefits (DIB) and Title XVI Supplemental Security Income benefits (SSI) on June

17   4 and July 29, 2009, respectively.  The applications were denied initially and on

18   reconsideration.  Plaintiff timely requested a hearing and one was held on June 15,

19   2011, before Administrative Law Judge (ALJ) Moira Ausems via video.  Plaintiff,

20   represented by counsel, testified at this hearing.  Thomas Polsin testified as a

21   Vocational Expert (VE).  On December 2, 2011, the ALJ issued a decision denying

22   benefits.  The Appeals Council denied a request for review and the ALJ's decision

23   became the final decision of the Commissioner.  This decision is appealable to district

24   court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

25

26                       **STATEMENT OF FACTS**

27       The facts have been presented in the administrative transcript, the ALJ's

28   decision, the Plaintiff's and Defendant's briefs, and will only be summarized here.  At

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 1**

1    the time of the administrative hearing, Plaintiff was 47 years old.  He has a high
2    school education and past relevant work experience as a shipping clerk and as a
3    warehouse laborer.  Plaintiff alleges disability since February 2, 2009, and his date
4    last insured for DIB was March 31, 2014.

5

6                                **STANDARD OF REVIEW**

7            "The [Commissioner's] determination that a claimant is not disabled will be
8    upheld if the findings of fact are supported by substantial evidence...." *Delgado v.*
9    *Heckler*, 722 F.2d 570, 572 (9th Cir. 1983).  Substantial evidence is more than a mere
10   scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less
11   than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);
12   *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir.
13   1988).  "It means such relevant evidence as a reasonable mind might accept as
14   adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91
15   S.Ct. 1420 (1971).  "[S]uch inferences and conclusions as the [Commissioner] may
16   reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457
17   F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
18   On review, the court considers the record as a whole, not just the evidence supporting
19   the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir.
20   1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

21           It is the role of the trier of fact, not this court to resolve conflicts in evidence.
22   *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational
23   interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749
24   F.2d 577, 579 (9th Cir. 1984).

25           A decision supported by substantial evidence will still be set aside if the proper
26   legal standards were not applied in weighing the evidence and making the decision.
27   *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir.
28   1987).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

1

**ISSUES**

Plaintiff argues the ALJ erred by: 1) omitting his trochanteric bursitis and sacroilitis as "severe" impairments at step two of the sequential evaluation process; 2) improperly discounting his credibility regarding his subjective pain complaints and claimed physical limitations; 3) improperly rejecting the opinions of his treating nurse practitioner regarding his physical limitations; 4) improperly rejecting lay witness opinion regarding his physical limitations; 5) arriving at a determination regarding his residual functional capacity (RFC) which was at odds with his testimony and the opinions of his treating nurse practitioner; and 5) failing to present a hypothetical to the VE which included the full extent of his physical limitations.

**DISCUSSION**

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past.  If the claimant is able to perform her previous work, she is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).  If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has severe impairments which include history of left femur fribroma that resulted in a spontaneous femur fracture in 1980; history of right patellar fracture; mild left hip degenerative joint disease;

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

diffuse osteopenia; minute lumbar osteophyte formations and degenerative changes of the apophyseal joint; and a seizure disorder; 2) Plaintiff does not have an impairment or combination of impairments that meets or equals any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform sedentary work that does not require more than occasional postural or manipulative activities or involve any climbing of ladders, ropes, or scaffolds, or any exposure to hazards; 4) Plaintiff's RFC prevents him from performing his past relevant work; and 5) Plaintiff's RFC allows him to perform other jobs that exist in significant numbers in the national economy, including hand packager, telephone solicitor, and cashier.   Accordingly, the ALJ concluded the Plaintiff is not disabled.

**SEVERE IMPAIRMENT**

A "severe" impairment is one which significantly limits physical or mental ability to do basic work-related activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c). It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. §§ 404.1508 and 416.908.

Step two is a *de minimis* inquiry designed to weed out nonmeritorious claims at an early stage in the sequential evaluation process. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), citing *Bowen*, 482 U.S. at 153-54 ("[S]tep two inquiry is a *de minimis* screening device to dispose of groundless claims"). "[O]nly those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two. *Bowen*, 482 U.S. at 158 (concurring opinion). "Basic work activities" are the abilities and aptitudes to do most jobs, including: 1) physical functions such as walking, standing, sitting, lifting, pushing,

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

pulling, reaching, carrying, or handling; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers and usual work situations; and 6) dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b) and 416.921(b).

The ALJ's omission of trochanteric bursitis in Plaintiff's left hip (Tr. at p. 248) and "left sacroilitis" (Tr. at p. 253) as "severe" impairments is of no consequence.[1] These conditions relate to, and are not independent of, the severe impairments found by the ALJ concerning Plaintiff's back (minute lumbar osteophyte formations and degenerative changes of the apophyseal joint) and left leg and left hip (history of left femur fribroma that resulted in a spontaneous femur fracture in 1980; history of right patellar fracture; mild left hip degenerative joint disease; diffuse osteopenia).  There is nothing in the record suggesting that the trochanteric bursitis and sacroilitis exacerbated Plaintiff's physical limitations or gave rise to separate additional limitations not considered by the ALJ.  Accordingly, the ALJ did not err in omitting these as severe impairments.  Furthermore, if there was any error, it was harmless.

**CREDIBILITY/RFC**

An ALJ can only reject a plaintiff's statement about limitations based upon a finding of "affirmative evidence" of malingering or "expressing clear and convincing reasons" for doing so.  *Smolen,* 80 F.3d at 1283-84.  "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements

---

[1] "Sacroilitis" is used to describe any inflammation in the sacroiliac joint which is located on either side of the sacrum (lower spine) that connects to the iliac bone of the hip.  See http://www.spine-health.com/conditions/sacroiliac-joint-dysfunction/all-about-sacroilitis

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 6**

in her testimony." *Tonapeytan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). See also *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002)(following factors may be considered:  1) claimant's reputation for truthfulness;  2) inconsistencies in the claimant's testimony or between her testimony and her conduct; 3) claimant's daily living activities; 4) claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition).

In January 2009, Jeffrey C. Cleven, M.D., noted the "[m]ost obvious deficiency" was that Plaintiff's left leg was slightly shorter than his right leg. (Tr. at pp. 149-50).  Dr. Cleven opined that some of Plaintiff's "standing and walking symptoms may relate to the hip and lumbar stresses from the discrepancy which can be corrected with a heel lift, starting [at] about one-half inch." (Tr. at p. 150).  Dr. Cleven referred Plaintiff to "Hangar Ortho" for a heel lift.  (*Id*.).  As noted by the ALJ, subsequent medical records suggest he did not follow through with obtaining the recommended heel lift.  (Tr. at pp. 188, 194, 216, 228 and 257).  The same is suggested by Plaintiff's own hearing testimony.  (Tr. at p. 302).

There are, however, other medical records suggesting Plaintiff did use a heel lift at times and that it was beneficial to him.  Plaintiff saw John Staeheli, M.D., of Northwest Orthopaedic, on September 30, 2010, and told him he had seen a doctor in Portland, Oregon (Dr. Cleven) who recommended a heel lift, but "[t]his did not seem to help and in fact he says it made the pain a little worse."  (Tr. at p. 234).  A November 10, 2010 chart note from Dr. Staeheli states "heel lift left shoe Stephen reported decreased pain and increased ability to walk/stand without as noticeable symptoms," (Tr. at p. 223), and a November 15, 2010 chart note states "[h]ave been using lift in shoe which helps when standing but walking having pain."  (Tr. at p. 222).  And yet, a May 3, 2011 report from Dr. Staeheli indicates Plaintiff never used a heel lift as the doctor had recommended:

> I felt that his symptoms might well be relieved just using a shoe lift.  He did not get this when I recommended [it] to him last fall as he felt the state should have paid for this and

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

they did not do [so because of] the budget cutbacks. I told him that his insurance company will not pay for this type of device. I cut him three heel lifts out of felt that he can use in his shoe and suggested that he talk to a shoe repairman who can typically put a lift belt onto the bottom of his shoe for about $30 or so. We put him on a block test and found that about a 0.5-inch lift seemed to feel better. I think his symptoms are probably referred from his back and are aggravated by the leg-length discrepancy. I do not see anything that needs to be done in terms of any orthopedic surgery.

(Tr. at p. 228).

At his administrative hearing, Plaintiff testified about his visits to Dr. Staeheli and that he had recommended Plaintiff "go to the shoe repair guy . . . and the shoe mall." According to Plaintiff, however, "that didn't seem quite . . . right to me." (Tr. at p. 302). The record shows, however, that all of the medical professionals recognized and concurred that use of a heel lift would be appropriate. In November 2010, a physical therapist at Therapeutic Associates recommended that Plaintiff be discharged from physical therapy, noting as follows: "In therapy use of shims under foot/LE did correct standing posture and ease discomfort while upright. Stephen may benefit from consult and set up of 3/4 inch to 1 inch build up/lift on shoes. Recommend he be referred to appropriate specialist that can provide this service." (Tr. at p. 216). In January 2011, Aaron Thomason, the Plaintiff's treating nurse practitioner, indicated that "participation in training or employment activities was appropriate at this time" for the Plaintiff, based on the "notes and recommendations" from the orthopedist (Dr. Staeheli) who had evaluated him. (Tr. at p. 194). In March 2012, Plaintiff saw Janmeet S. Sahota, M.D., at the Tri-City Orthopaedic Clinic who told Plaintiff "mostly his symptoms are likely due to his SI [sacroiliac] joint and bursitis and the limb length discrepancy and he elected to proceed with getting his shoes adjusted." (Tr. at p. 264). Subsequent medical records suggest Plaintiff was following up with getting his shoes adjusted. On March 15, 2012, Wing C. Chau, M.D., of Tri-Cities Physical Medicine and Rehabilitation, P.C., noted Plaintiff "is being followed by orthopedist and is getting lifts," (Tr. at p. 254), and a March 28,

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 8**

2012 note from Jourdan C. Nicholls, D.P.M., indicated the plan was to add a half-inch to Plaintiff's left shoe."[2]

The foregoing indicates Plaintiff failed to follow a specified course of treatment (left heel lift) recommended from the very outset of his alleged disability and repeatedly recommended thereafter. This constitutes a "clear and convincing" reason to discount his credibility. An ALJ may consider an "unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment" in evaluating the credibility of a claimant's testimony. *Smolen*, 80 F.3d at 1284.[3]

Mr. Thomason, a nurse practitioner with Tri-Cities Community Health, began seeing the Plaintiff in approximately July 2010, after the Plaintiff's move from Portland, Oregon to Kennewick, Washington.[4] In August 2010, he completed a "Physical Evaluation" form for the Washington Department Social and Health Services (DSHS) in conjunction with Plaintiff's application for and receipt of general

---

[2] Records from Tri-City Orthopaedic Clinic and Tri-Cities Physical Medicine and Rehabilitation were made part of the record by the Appeals Council and considered by it in denying review. (Tr. at pp. 6-9).

[3] Plaintiff's briefing does not challenge this reason cited by the ALJ for discounting his credibility.

[4] As a nurse practitioner, Mr. Thomason is not a medically acceptable treating source within the meaning of Social Security regulations. 20 C.F.R. §404.1513(a) and 20 C.F.R. §416.913(a). Although his opinion cannot be considered a medical opinion, it can still be considered to show the severity of the Plaintiff's impairments and how they affected his ability to work. 20 C.F.R. §404.1513(d) and 20 C.F.R. §416.913(d). An ALJ can reject an opinion from an "other source," such as a nurse practitioner, by providing "germane" reasons for doing so. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

assistance benefits.  In that evaluation, Mr. Thomason indicated  Plaintiff's left hip impairment was of moderate to marked severity and affected his abilities to sit, stand, walk, lift and carry.  He further indicated that Plaintiff had restricted mobility, agility or flexibility in terms of balancing, bending, climbing, crouching, sitting and stooping.[5]  He opined that Plaintiff's overall work level was "sedentary," defined as "the ability to lift 10 pounds maximum and frequently lift and/or carry such articles as files and small tools," and "may require sitting, walking and standing for brief periods."  (Tr. at p. 205).[6]  Mr. Thomason indicated that Plaintiff was "able to participate in pre-employment activities such as job search or employment classes." (Tr. at p. 206).  In January 2011, Mr. Thomason indicated that Plaintiff was capable of standing for 20 minutes before he needed to change positions; was capable of sitting for 20 minutes before he needed to change positions; and could lift 10 pounds frequently and greater than 5 pounds frequently.  He acknowledged, however, that this was "mostly based on [plaintiff's] subjective history."  (Tr. at p. 193).  And, as noted above, he indicated that it was appropriate at that time for Plaintiff to participate in training or employment activities.  (Tr. at p. 194).

In her decision, the ALJ commented on Mr. Thomason's January 2011

---

[5] Contrary to Plaintiff's assertion, however, this evaluation made no representation regarding the extent of the restrictions and more specifically, whether the Plaintiff could do these things less than "occasionally" throughout an eight hour workday.

[6] This is consistent with the definition of "sedentary" work found in the Social Security regulations.  Per those regulations, such work involves lifting 10 pounds maximum and occasionally lifting and/or carrying articles such as docket files, ledgers, and small tools.  It involves sitting, although a certain amount of walking and standing is often necessary in carrying out job duties.  20 C.F.R. §404.1567(a) and §416.967(a)).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

assessment as follows:

> In the questionnaire of January 6, 2011, ARNP Thompson (sic) described the claimant as able to stand/sit for 20 minutes before needing a change of position and as able to lift 10 pounds occasionally. Even these subjectively-reported limitations are generally consistent with the ability to perform sedentary work, although it is noted for the purpose of this decision that the record provides no support for a conclusion that the claimant requires an opportunity to alternate the position of sitting after a mere 20 minutes.

(Tr. at pp. 23-24). As indicated above, Mr. Thomason expressly noted that this assessment was mostly based on the Plaintiff's subjective history. In a questionnaire Mr. Thomason completed in July 2010, he reported that Plaintiff could stand two hours before needing to change positions, and sit one hour before needing to change positions. (Tr. at p. 209).[7]

///
///
///
///
///
///
///
///
///
///
///

---

[7] The ALJ questioned the Plaintiff's credibility because of an April 13, 2011 chart note of Mr. Thomason which, according to the ALJ, indicated the Plaintiff told Mr. Thomason he had "no pain" when sitting. (Tr. at p. 187). The note appears to read, however, that "when stands still- no pain . . . when sits, picks things up, walks, pain starts again in hip."

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

The ALJ's RFC determination is largely consistent with Mr. Thomason's assessment of Plaintiff's physical limitations and, as such, constitutes another "clear and convincing" reason offered by the ALJ to discount Plaintiff's assertion that his limitations are greater than those found by the ALJ.[8]  To the extent, if any, the RFC determination is not consistent with Mr. Thomason's assessment that Plaintiff needed to alternate sitting and standing every twenty minutes, the ALJ provided a "germane"

---

[8] It is unnecessary to analyze the other reasons offered by ALJ for discounting Plaintiff's credibility.  That said, in assessing the degree of pain the Plaintiff claimed to be experiencing, it was appropriate for the ALJ to also consider the fact Plaintiff was taking no prescription medication.  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  In July 2010, Plaintiff informed the Tri-Cities Community Health Center that his current medications were aspirin and ibuprofen (Tr. at p. 207), and in September 2010, he apparently informed Dr. Staeheli that he was "not taking anything for [pain] at the present time."  (Tr. at p. 234).

In her decision, the ALJ observed that "[s]ubsequent to January 5, 2009, the claimant did not seek medical care from any source other than a brief period of chiropractic therapy . . ., until July 15, 2010, a gap in treatment of one and one-half years that does not provide support for his allegation of total disability under the Social Security Act during that period."  (Tr. at p. 21).  In a "Disability Report" he completed for the Social Security Administration in July 2009, Plaintiff explained that once he was laid off in January 2009, he lost his health insurance and so he was unable to afford additional medical treatment, and his unemployment income appeared too high to qualify for public assistance or Medicaid.  (Tr. at p. 107).  This does not explain, however, how he was able to afford chiropractic treatment for neck and shoulder pain between August 10, 2009 and September 22, 2009 (Tr. at pp. 151-175).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

reason for discounting the same, that being the assessment was based on Plaintiff's subjective statements.

Plaintiff testified he uses a cane to ambulate so he can put as much weight as possible on his right side so his left hip does not hurt. (Tr. at p. 289). The ALJ did not include this in her RFC determination and therefore, did not present it to the VE in hypothetical questioning. While treating and examining medical sources noted Plaintiff's use of a cane, none of them stated it was necessary and/or prescribed its use. A reasonable explanation is these sources believed the use of a left heel lift would resolve the problem in Plaintiff's left hip. The ALJ did not err in failing to include Plaintiff's use of a cane as part of her RFC determination. Therefore, she did not err in failing to present such a limitation to the VE in the hypothetical questions she presented to him.

**LAY TESTIMONY**

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that must be considered by an ALJ. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). In order to discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

The "clear and convincing" reasons the ALJ offered for discounting Plaintiff's testimony as to his pain and functional limitations constitute "germane" reasons for discounting the statement of his mother (Tr. at pp. 116-23) regarding Plaintiff's functional limitations. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)(because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony").

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 13**

**VE HYPOTHETICALS/STEP FIVE**

The ALJ's ultimate RFC determination was presented to the VE in the form of a hypothetical question and the VE identified several jobs existing in the national economy which the Plaintiff would be capable of performing. (Tr. at pp. 308-311). The ALJ, however, also presented a second hypothetical question asking the VE to assume the Plaintiff required the option to sit or stand at will throughout an eight hour workday. The VE testified the telephone solicitor position (6,700 jobs in Washington State; 404,000 jobs in the United States) would allow for this option. On the other hand, a sit/stand option would diminish by 50% the number of hand packager jobs available. Accordingly, instead of 1,200 such jobs available in Washington, there would be 600; and instead of 71,000 such jobs available in the United States, there would be 35,500. (Tr. at pp. 311-12). Even with the reduced number of hand packager jobs, however, there was still a significant number of jobs in the national economy which Plaintiff would be capable of performing, considering the 404,000 available telephone solicitor jobs.

The VE testified the cashier position would allow a person to sit or stand at will, but if a person chose to stand, that might require some bending at the waist which could reduce the number of positions if the person was limited to less than occasional bending. More specifically, according to the VE, if an individual stood for 50% of the day to perform the cashier position, he would be bending more than occasionally (more than 33% of the time). Accordingly, if he could not bend more than occasionally, the cashier position would be eliminated. (Tr. at pp. 315-16). As noted above, the ALJ determined that Plaintiff was limited to occasional bending. The VE, however, also pointed out that the amount of bending depended on the particular work station and the height of the individual: "I would expect a person that was 5'10 to six feet tall, for example, is going to be - - if they're standing and bending over a desk 50 percent of the day - - that's going to cause some other issues." (Tr. at p. 320). The record indicates Plaintiff is only 5'5 and ½" tall (Tr. at 192) and

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 14**

therefore, it is unclear whether performing the cashier position while standing would present a problem for the Plaintiff in terms of bending.  In the end, however, even if the cashier position were disregarded, the VE still identified a significant numbers of jobs (telephone solicitor and hand packager) in the national economy available to an individual with Plaintiff's RFC, even if it was also necessary for that individual to have the option of sitting or standing at will  throughout the workday.

## CONCLUSION

Defendant's Motion For Summary Judgment (ECF No. 16) is **GRANTED** and Plaintiff's Motion For Summary Judgment (ECF No. 15) is **DENIED**.  The Commissioner's decision denying benefits is **AFFIRMED**.

**IT IS SO ORDERED.**   The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this   24th   of February, 2014.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 15**